IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY JO HILER, )
 )
 Plaintiff, )
 )
 v. )
 ) Civil Action No. 09-905
MICHAEL J. ASTRUE, )
COMMISSIONER OF )
SOCIAL SECURITY, )
 )
 Defendant. )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 6th day of July, 2010, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, granted, and the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, denied. The case will be remanded to the Commissioner for further proceedings consistent with this Memorandum Judgment Order pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence.

"Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000), quoting, Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003), quoting, Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979). These well-established principles dictate that the court remand this case to the Commissioner for further proceedings.

Plaintiff filed her applications for DIB and SSI on June 21, 2006, alleging disability beginning June 8, 2006, due to multiple sclerosis and a back disorder. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing on November 21, 2007, at which plaintiff, who was unrepresented, and a vocational expert appeared and testified. On March 5, 2008, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on May 13,

AO 72
(Rev. 8/82)

2009, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff was 45 years old at the time of the ALJ's decision and is classified as a younger individual under the regulations. 20 C.F.R. §§404.1563(c), 416.963(c). Plaintiff has a high school education. Although plaintiff has past relevant work experience as a cashier and a prep cook, she has not engaged in substantial gainful activity at any time since her alleged onset date of disability.

After hearing testimony from plaintiff and a vocational expert at the hearing and reviewing the medical records, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that plaintiff suffers from the severe impairments of multiple sclerosis and a back disorder, but her impairments, either alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ also found that plaintiff retains the residual functional capacity to perform a range of sedentary work with a number of other limitations. Plaintiff is limited to occasional stooping, crouching, crawling, kneeling and climbing ramps and stairs. In addition, she is precluded from balancing, commercial driving, and working around hazards such as unprotected heights or moving machinery (collectively, the "RFC Finding").

Based upon the vocational expert's testimony, the ALJ

concluded that plaintiff could not perform her past work, but her vocational factors and residual functional capacity allowed her to make an adjustment to other work that exists in significant numbers in the national economy, such as a school bus monitor, a charge account clerk and a telephone quote clerk. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has promulgated regulations that incorporate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and

residual functional capacity. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

Plaintiff argues that the ALJ's step 5 finding that she retains the residual functional capacity to perform work that exists in the national economy is not supported by substantial evidence.[1] More specifically, plaintiff contends that the ALJ's RFC Finding is deficient because it did not account for her absences from work that resulted from multiple sclerosis related flare-ups. The court agrees that the ALJ failed to adequately explain why he discounted evidence he asked plaintiff to obtain pertaining to her absences from work due to multiple sclerosis. Therefore, this case must be remanded to the Commissioner for additional consideration at step 5.

When the ALJ asked plaintiff to describe what prevents her from working, she testified that she cannot walk when she has flare-ups related to her multiple sclerosis. (R. 31). Plaintiff further testified that in the twelve to eighteen months prior to the administrative hearing, she had four or five such flare-ups

---

[1] At step 5, the Commissioner must show there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with her age, education, past work experience and residual functional capacity. 20 C.F.R. §§404.1520(g)(1),416.920(g)(1). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ considers the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(4), 416.945(a)(4).

which required her to miss approximately one week of work each time. (R. 31-32). The vocational expert subsequently testified that no entry-level, unskilled jobs exist in the national economy for an individual who is absent from work more than three weeks per year. (R. 37-38).

The ALJ requested plaintiff to obtain her employment records which document her absences due to multiple sclerosis flare-ups and forward that information to him because it "would support [her] case ... and it would help [him]." (R. 40). Plaintiff complied with the ALJ's request and provided him with employment records showing that she missed work on the following occasions: (1) July 2, 2006 through July 8, 2006; (2) May 27, 2007 through June 2, 2007; (3) August 12, 2007 through August 25, 2007; and (4) October 18, 2007 through October 23, 2007. (R. 76-83). These records indicate plaintiff missed four weeks of work in 2007 alone, which exceeds the three weeks of absences that the vocational expert testified would preclude the performance of any entry-level, unskilled job.

The ALJ acknowledged in his decision that plaintiff submitted the requested employment records showing her absences from work in 2006 and 2007. (R. 13). The ALJ did not address the fact that plaintiff missed four weeks of work in 2007, which exceeds the amount of absences tolerated by employers for entry-level, unskilled jobs. Rather, the ALJ simply noted in his decision that plaintiff has "intermittent periods of recurrence where her MS flares up, but these flare ups have been infrequent and of

relatively short duration." (R. 15). To the contrary, as plaintiff's employment records show, she missed work for a minimum of a week each time she experienced problems related to her multiple sclerosis.

On appeal to this court, the Commissioner contends in his brief that plaintiff failed to submit any medical records to support her claim that her absences from work in May, June and August 2007 were due to multiple sclerosis flare-ups. See defendant's Brief in Support of Motion for Summary Judgment (Document No. 11) at 11-12. Despite the Commissioner's present contention that plaintiff failed to submit medical records to substantiate that her absences from work were related to multiple sclerosis, the ALJ did not state in his decision whether that was the reason why he discounted plaintiff's employment records that he requested she obtain for him. If the lack of certain medical records was a concern to the ALJ, he should have requested that plaintiff obtain any additional evidence he deemed necessary, just as he asked her to obtain employment records that he believed would support her case. This is especially true where, as here, the plaintiff was unrepresented at the hearing before the ALJ. See Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980) (holding the ALJ's duty to develop a full and fair record is heightened in cases where a claimant is unrepresented); see also Reefer, 326 F.3d at 380 (in fulfilling the duty to help a pro se claimant develop the record, an ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the

relevant facts").

As the record stands, this court is left to guess why the ALJ discounted evidence indicating that plaintiff may be required to miss four or more weeks of work per year as a result of her multiple sclerosis, thus precluding the performance of any entry-level, unskilled job as the vocational expert testified. Consequently, this case must be remanded for additional consideration by the ALJ.

On remand, the ALJ shall state whether he accepts or rejects plaintiff's employment records that document her absences from work and whether that evidence corroborates her testimony that she missed at least four weeks of work in the year prior to the administrative hearing due to multiple sclerosis flare-ups. In addition, the ALJ shall obtain any additional medical records he deems necessary to determine whether plaintiff's absences from work were caused by her multiple sclerosis. If necessary, the ALJ shall reassess plaintiff's residual functional capacity to include a limitation accounting for multiple sclerosis related absences from work and, in that event, he shall pose a hypothetical question to the vocational expert that incorporates any such revised RFC Finding.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the

Commissioner for further proceedings consistent with this Memorandum Judgment Order.

                                                              *Gustave Diamond*
                                                              Gustave Diamond
                                                              United States District Judge


cc: Karl E. Osterhout, Esq.
    1789 South Braddock Avenue
    Suite 570
    Pittsburgh, PA 15218

    Paul Kovac
    Assistant U.S. Attorney
    700 Grant Street
    Suite 4000
    Pittsburgh, PA 15219